**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK SUTER,** | : | **CIVIL ACTION** |
|     **Plaintiff,** | : | |
| | : | **No.** |
| **v.** | : | |
| | : | |
| **CLEVELAND STEEL CONTAINER,** | : | **JURY TRIAL DEMANDED** |
| | : | |
|     **Defendant.** | : | |

**COMPLAINT**

**I. PRELIMINARY STATEMENT**

This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Mark Suter, (hereinafter "Suter" or "Plaintiff"). Plaintiff was an employee of Cleveland Steel Container (hereinafter "Cleveland Steel" or Defendant), who has been harmed by age discrimination, failure to accommodate a known disability and retaliatory practices, as well as other improper conduct by Defendant Cleveland Steel and its agents, servants and representatives named herein. This action is brought under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §12101 *et seq.*, as amended by the ADAAA, the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

## II.     JURISDICTION AND VENUE

1. The original jurisdiction of this Court is invoked, and venue is in this District, pursuant to Title 42 U.S.C. § 2000e-5(f), Title 28 U.S.C. §1331, 1391, 2201, 2202, 1343 and the claim is substantively based on the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, as further amended by the ADAAA, the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

2. Venue is proper in the Eastern District of Pennsylvania in that some or all of the events complained of herein occurred in Bucks County, Pennsylvania.

3. All conditions precedent to the institution of this suit have been fulfilled. As to the ADA, Plaintiff has invoked the EEOC and has received a Notice of Right to Sue as required by that statute. On or about February 25, 2021, Plaintiff filed a Charge of Discrimination with the EEOC against the Defendant, alleging, *inter alia*, disability discrimination, age discrimination and retaliation. A Notice of Right to Sue was issued by the Equal Employment Opportunity Commission on August 9, 2021.

4. This action has been filed within ninety (90) days of receipt of said Notice; and within 2 years of the FMLA cause of action.

## III.  PARTIES

5. Plaintiff, Mark Suter, is a 60-year-old, adult male and is a citizen and resident of the Commonwealth of Pennsylvania residing at 2931 Jones Boulevard, Easton, PA.

6. At all times relevant herein, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C. § 12111(4), the ADEA, 29 U.S.C. §630(f), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* and is subject to the provisions of said Acts.

7. At all times relevant herein, Plaintiff was a "person" as defined the ADA, 42 U.S.C. § 12111(7), the ADEA, 29 U.S.C. §630(a), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* and is subject to the provisions of said Acts.

8. At all times relevant herein, Plaintiff was "disabled" as defined by the ADA, 42 U.S.C. § 12102(1), and is subject to the provisions of said Act.

9. At all times relevant herein, Plaintiff was a "qualified individual" as defined by the ADA, 42 U.S.C. § 12111(8) and in a protected age category under the ADEA, 29 U.S.C. §631, and is subject to the provisions of said Acts.

10. Defendant, Cleveland Steel, is an Ohio corporation doing business within the Commonwealth of Pennsylvania, with a principle place of business at 350 E. Mill Street, Quakertown, Pennsylvania.

11. At all times relevant herein, Cleveland Steel was an "employer" as defined by the ADA, 42 U.S.C. § 12111(5), the ADEA, 29 U.S.C. §630(b), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* and is subject to the provisions of said Acts.

12. At all times relevant herein, Cleveland Steel was a "person" as defined by the ADA, 42 U.S.C. § 12111(7), the ADEA, 29 U.S.C. §630(a), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* and is subject to the provisions of said Acts.

## IV. **DEFENDANT'S SUPERVISORS AND AGENTS**

13. Joe Kelly, (hereinafter "Kelly") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant to this action Kelly was General Manager of Defendant Cleveland Steel. At all times relevant herein, Kelly was an officer, agent, servant, workman and/or employee of Defendant Cleveland Steel, acting and or failing to act within the scope, course and authority of his employment and his employer, Cleveland Steel. At all times relevant, Kelly was acting in his capacity as an employee of Defendant Cleveland Steel and his personal capacity as a supervisor of Plaintiff.

14. Richard Mayo, (hereinafter "Mayo") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant to this action Mayo was Product Manager of Defendant Cleveland Steel. At all times relevant herein, Mayo was an officer, agent, servant, workman and/or employee of Defendant Cleveland Steel, acting and or failing to act within the scope, course and authority of his employment and his employer, Cleveland Steel. At all times relevant, Mayo was acting in his capacity as an employee of Defendant Cleveland Steel and his personal capacity as a supervisor of Plaintiff.

15. Terry Schmoyer, (hereinafter "Schmoyer") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant to this action Schmoyer was Supervisor/Lithographer/Forman of Defendant Cleveland Steel. At all times relevant herein, Schmoyer was an officer, agent, servant, workman and/or employee of Defendant Cleveland Steel, acting and or failing to act within the scope, course and authority of his employment and his employer,

Cleveland Steel. At all times relevant, Schmoyer was acting in his capacity as an employee of Defendant Cleveland Steel and his personal capacity as a supervisor of Plaintiff.

16. Ruth Carnes, (hereinafter "Carnes") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant to this action Carnes was Human Resources Manager of Defendant Cleveland Steel. At all times relevant herein, Carnes was an officer, agent, servant, workman and/or employee of Defendant Cleveland Steel, acting and or failing to act within the scope, course and authority of her employment and her employer, Cleveland Steel. At all times relevant, Carnes was acting in her capacity as an employee of Defendant Cleveland Steel and her personal capacity as a supervisor of Plaintiff.

17. Joe Eiben, (hereinafter "Eiben") is a resident and citizen of Ohio. At all times relevant to this action Eiben was Corporate Human Resources Director of Defendant Cleveland Steel. At all times relevant herein, Eiben was an officer, agent, servant, workman and/or employee of Defendant Cleveland Steel, acting and or failing to act within the scope, course and authority of his employment and his employer, Cleveland Steel. At all times relevant, Eiben was acting in his capacity as an employee of Defendant Cleveland Steel and his personal capacity was a supervisor of Plaintiff.

18. At all times relevant herein, Cleveland Steel was acting through its agents, servants and employees.

19. At all times relevant herein, Defendant Cleveland Steel is and has been a "person" and "employer" as defined under the ADA and is subject to the

provisions of said Act.

20. At all times relevant herein, Cleveland Steel was an "employer" as defined by the ADA, 42 U.S.C. § 12111(5), the ADEA, 29 U.S.C §630(b), and the FMLA, 29 U.S.C. § 2601 *et seq.,* and is subject to the provisions of said Acts.

21. At all times relevant herein, Cleveland Steel was a "person" as defined by the ADA, 42 U.S.C. §12111(7), the ADEA, 29 U.S.C. §630(a), and the FMLA, 29 U.S.C. § 2601 *et seq.*, and is subject to the provisions of said Acts.

22. At all times relevant herein, Defendant Cleveland Steel owned, operated, controlled and managed a Quakertown, Pennsylvania business location, by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

23. At all times relevant herein, Cleveland Steel employed more than fifteen and more than twenty employees for ADA and ADEA purposes.

24. At all times relevant herein, for FMLA purposes, Cleveland Steel had more than fifty employees within a seventy-five-mile radius of Plaintiff's worksite.

25. At all times relevant herein, Defendant Cleveland Steel acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

26. At all relevant times herein, Defendant Cleveland Steel knew, or had reason to know, of the actions and inactions alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

## V. CAUSES OF ACTION

27. Mark Suter is a male employee hired by Defendant Cleveland Steel in or about

November 27, 2007, as a Lithographer.

28. At all times relevant, Plaintiff, Mark Suter, maintained satisfactory job performance and had at all times fulfilled all of the duties and obligations commensurate with that employment.

29. At all times relevant herein, Defendant Cleveland Steel failed to establish, maintain and enforce an effective and well-known policy against harassment and discrimination based on disability and age that provided a meaningful complaint and reporting procedure.

30. Prior to being hired by Defendant, Plaintiff had been diagnosed with disabilities as that term is defined by the ADA.

31. Because Plaintiff's disabilities are permanent and chronic conditions that are episodic and have required multiple surgeries he is protected under the ADA and is entitled to reasonable accommodation.

32. At all relevant times, Defendant was aware of Plaintiff's disabilities.

33. Plaintiff's medical conditions required and needed surgeries on three separate occasions and required Plaintiff to be out on short term medical leave each time. Under the ADA, Plaintiff is entitled to leave as a form of accommodation.

34. For each of the aforementioned surgeries and medical leave, Plaintiff reasonably requested same and provided Defendant and his supervisors with medical documentation. Under the ADA no special or talismanic procedures or words are required to provide notice of a disability and/or to ask for accommodation (such as leave).

35. Plaintiff provided Defendant with medical documentation each time and

requested ADA/FMLA leave.

36. Because of his medical conditions, Plaintiff was subjected to hyper-criticism and hyper-scrutiny and related harassing and discriminatory conduct.

37. At all times, Defendant was dismissive and hostile to Plaintiff because of his disabilities and accommodation requests and failed to consider Plaintiff's rights under the ADA and FMLA.

38. At all times, Defendant was also dismissive and hostile to Plaintiff because of his age.

39. Defendant consistently engaged in a pattern and practice of discrimination and/or disperate treatment against Plaintiff based on his disabilities and age.

40. In or about May 2019 Plaintiff was on necessary medical leave for 32 days for medical treatment for his disabilities.

41. Regarding the above, Plaintiff again had provided medical documentation and also requested FMLA leave. Plaintiff had a right to request and obtain, and did request, both ADA protected leave and FMLA protected leave.

42. Subsequent to his surgeries and medical treatment and related leave due to his disabilities, Plaintiff provided Joe Kelly with a note from his doctor that he could return to work with only light duty. Plaintiff indicated also verbally with Kelly that he was flexible and could discuss specifically what he could do and what he could not do or needed accommodation for.

43. Joe Kelly ignored the doctor's note and Plaintiff's request to return and refused to allow Plaintiff to return to work for another 3 months because there was "no light duty work available and it was only available for employees injured on the job."

44. At all times employees are entitled to both ADA leave as an accommodation <u>as well as</u> ADA work site accommodations, including work-duty, shift, and other related adjustments to their work—as part of the ADA reasonable accommodations.

45. Once an employee directly or indirectly voices what can be reasonably understood as a request for work site, job, duty, shift, etc, accommodation, the employer <u>must</u> engage in the ADA's mandated interactive process to examine and consider any and all such accommodations.

46. Failure by the employer to engage in the ADA's interactive process precludes the employer from claiming that any accommodation is burdensome or unavailable.

47. An employer cannot require an employee who has taken ADA leave as an accommodation to be fully fit or cured or recovered before returning.

48. An employer cannot refuse to return an employee to his position post FMLA leave or discriminate or retaliate against an employee for taking FMLA leave.

49. Plaintiff immediately telephoned Joe Eiben and reported Joe Kelly's refusal to allow him to return to work reporting and complaining about this, thus, again, engaging in protected conduct. Eiben's response was, "maybe you should look for another job." Plaintiff proceeded to complain about this statement. While he did not use the words "you're fired" his words and tone, in addition to the refusal of Kelly to accept his medical documentation that he could return to work on light day, Kelly made it clear to Plaintiff that he was to be terminated, specifically in retaliation for Plaintiff engaging in protected conduct,

50. The telephone conversation with Eiben so exacerbated Plaintiff's depression

and anxiety that he began to over medicate himself to calm his nerves.

51. Eiben and Kelly knew of Plaintiff's disabilities and purposefully antagonized and retaliated against him. In addition, Defendant perceived that due to his age, Plaintiff could be ousted or was past his usefulness.

52. Plaintiff was told by his co-workers and supervisors, specifically, Joe Kelly and Joe Eiben, that he could not work there because of his disabilities. Joe Eiben told Plaintiff to "look for another job."

53. Terry Schmoyer, Forman and Plaintiff's supervisor, constantly made comments about Plaintiff's inability to work with others and keep up with his work. He called Plaintiff "gay" and told him he was stupid, slow and retarded due to his disability. Plaintiff was screamed at and treated with hostility by his co-workers and his supervisors and was subjected to a hostile and toxic work environment.

54. On or about May 2, 2020, Plaintiff was attacked and assaulted by a younger, male employee named Jim Durling (hereinafter "Durling). Durling was a Lithographer in the same department as Plaintiff.

55. Defendant knew or should have known of Durling's violent tendencies and the risks he posed to Plaintiff. Defendant allowed and tolerated this as part of the retaliation to oust and terminate Plaintiff.

56. Plaintiff did nothing to initiate this attack and had no history of violence or misconduct during his twelve years of employment with Defendant.

57. Plaintiff was forced to protect himself from the physical attack by Durling who hit Plaintiff in the back and shoulders with his fists and shoved Plaintiff violently to the ground.

58. Durling was aware that some of Plaintiff's disabilities included shoulder and neck conditions. As a result, Durling's physical assault aggravated Plaintiff's preexisting conditions.

59. Plaintiff was forced to seek medical care immediately following the physical assault. Plaintiff also filed a police report following the attack.

60. Plaintiff advised Defendant that these new physical injuries would require accommodation and treatment.

61. Following Durling's attack, Plaintiff was afraid of working near Durling, he asked for Schmoyer's help in moving him away from his assailant and assigning him to work in an area away from Durling. Plaintiff stressed that due to his disabilities he could not risk being assaulted again by Durling.

62. Schmoyer, who had witnessed the attack of Plaintiff by Durling, threatened Plaintiff by telling him that if he went to Joe Kelly about the attack, "[he] would lose [his] job." Again, this constituted adverse action and retaliatory treatment against Plaintiff.

63. As a result of Schmoyer refusing to move Plaintiff away from Durling or to further investigate the violent attack against Plaintiff, Plaintiff did go to Joe Kelly, who had witnessed the attack by Durling, and asked him to protect him from the continued physical and verbal threats and to accommodate him related to his shift/duties changes. Plaintiff pointed out that he was treated differently than Durling, not only due to his disabilities but also due to his age. Kelly refused to take any action.

64. Neither Kelly nor Schmoyer did anything to help Plaintiff. They expressly stated that they would not help him, refused to move Plaintiff to another

location, and, instead, forced him to work with his assailant, all as part of Defendant's plan of retaliation.

65. On or about May 2, 2020, Plaintiff's employment was terminated by Defendant after he objected to working with Durling.

66. Durling, who was younger than Plaintiff, and who committed the assault against Plaintiff, was not terminated.

67. Plaintiff was discriminated against because of his age and disabilities. In violation of the ADEA, Plaintiff was treated differently than younger workers by Defendant who applied stereotypical, age-discrimination prejudices against Plaintiff in his termination.

68. Defendant failed to engage in the interactive process, failed to accommodate Plaintiff, targeted him because of his disabilities, and retaliated against Plaintiff for exercising his rights under the ADA and FMLA, namely requesting a reasonable accommodation, and for reporting a hostile work environment. Defendant also retaliated against Plaintiff for reporting discrimination under the ADA and ADEA.

69. Due to the foregoing wrongful and discriminatory conduct, Plaintiff has suffered severe emotional distress, the loss of back pay and front pay, and other damages, including attorneys' fees and costs.

70. Based on the foregoing, Plaintiff has been discriminated and retaliated against in violation of the ADA and FMLA, including for exercising his rights under the ADA and FMLA, namely requesting and/or using leave or a reasonable accommodation Plaintiff has suffered severe emotional distress, loss of back pay, front pay, and other damages, including attorneys' fees and costs.

71. Plaintiff had been so humiliated and degraded by Defendants' discriminatory treatment based on his disability and age and/or medical leave, that his ability to enjoy life has been adversely affected.

72. Defendant, Cleveland Steel did not take action to stop the aforementioned supervisors, agents and representatives from their discriminatory and harassing conduct against Plaintiff.

73. Defendant Cleveland Steel had, acting through its agents, servants and representatives, on more than one occasion, heard complaints and reports from Plaintiff of the above and other harassment, discrimination and retaliation.

74. At all relevant times herein, Defendant, Cleveland Steel knew, or had reason to know, of the actions and inactions alleged herein, and/or participated in some of said actions and is ultimately responsible for same.

75. Defendant Cleveland Steel supervisors, managers, and employees participated in and encouraged the discrimination and retaliation to which Plaintiff was subjected.

76. Plaintiff was at all times fully able to perform all of the essential functions of his position with reasonable accommodation.

77. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages due to pain, suffering, mental anguish, fear, anxiety, sleeplessness, humiliation and severe emotional, psychological and physical distress.

78. Defendants' aforesaid actions were outrageous, egregious, preposterous, malicious, intentional, willful, wanton and in reckless disregard of Plaintiff's

rights.

## COUNT I
## PLAINTIFF
## v.
## CLEVELAND STEEL
## <u>VIOLATION OF THE ADA</u>

79. Paragraphs 1 through 78 inclusive, are incorporated by reference as if fully set forth at length herein.

80. At all times relevant herein, Plaintiff was disabled, had a record of a disability, and was regarded as and/or perceived as disabled by Defendant Cleveland Steel.

81. Plaintiff was able to perform all of the essential functions of his position with accommodation.

82. By reason of the conduct set forth above, Cleveland Steel intentionally, knowingly, and purposefully violated the ADA by refusing to accommodate Plaintiff and invidiously discriminating against the qualified Plaintiff who had a disability.

83. By its actions and inactions through its agents, servants and representatives, Cleveland Steel created, maintained, and permitted to be maintained a work environment which was hostile to persons such as Plaintiff who have disabilities and/or have a record of or are perceived as having a disability.

84. As a direct result of Plaintiff's disability and/or request for accommodation, Cleveland Steel terminated Plaintiff.

85. Cleveland Steel's aforesaid actions were outrageous, egregious, malicious, intentional, willful, wanton and in reckless disregard of Plaintiff's rights.

**COUNT II**
**PLAINTIFF**
**v.**
**CLEVELAND STEEL**
**RETALIATION UNDER THE ADA**

86. Paragraphs 1 through 85 inclusive, are incorporated by reference as if fully set forth at length herein.

87. By the acts complained of, Defendant Cleveland Steel has retaliated against Plaintiff for exercising his rights under the ADA, namely engaging in protected conduct in requesting and/or using leave and/or other reasonable accommodation, in violation of the ADA; and/or engaging in protected conduct in reporting, objecting to and/or opposing Defendant's ADA violative processes.

88. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Cleveland Steel's retaliatory practices unless and until this Court grants relief.

**COUNT III**
**PLAINTIFF**
**v.**
**CLEVELAND STEEL**
**VIOLATION OF THE ADEA**

89. Paragraphs 1 through 88 inclusive, are incorporated by reference as if fully set forth at length herein.

90. Solely because of Plaintiff's age, Plaintiff was treated disparately and denied the opportunity to work.

91. The employment practices and actions of Defendant disparately impacted upon the right of employees over age 40.

92. The foregoing acts of Cleveland Steel constitute unlawful discrimination and retaliation against Plaintiff in violation of the Age Discrimination in Employment Act of 1967, as amended.

93. The actions of Defendant are without reason or basis and are so arbitrary, capricious, and unfounded that Plaintiff is thereby denied due process of law.

94. As part of its ADEA discrimination and retaliation, Defendant treated Plaintiff (60 years of age) in a discriminatory and in a disperate fashion than Durling who was much younger.

95. As a direct result of the Defendant's willful and unlawful actions in treating employees, including Plaintiff, in a discriminatory manner solely because of their age, in violation of the ADEA.

**COUNT IV**
**PLAINTIFF**
**v.**
**CLEVELAND STEEL**
**VIOLATION OF THE FMLA**

96. Paragraphs 1 through 95 inclusive, are incorporated by reference as if fully set forth at length herein.

97. Defendant intentionally, knowingly, and purposefully violated the FMLA by invidiously retaliating against Plaintiff who had a serious medical condition and took protected FMLA leave.

98. The aforementioned constitutes interference under the FMLA.

99. The aforementioned constitutes retaliation for requesting and/or taking protected FMLA leave.

100. As a result of Defendant's willful and unlawful actions set forth herein, Plaintiff has sustained loss of earnings, loss of benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

**PRAYER FOR RELIEF**

101. Plaintiff repeats the allegations of paragraphs 1 through 100 of this Complaint as if set forth at length herein.

WHEREFORE, Plaintiff requests this Court to enter judgment in his favor and against Defendant and requests that this Court:

   a. Exercise jurisdiction over his claims;

   b. Award traditional tort remedies such as compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, severe emotional trauma, and punitive damages;

   c. Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

   d. Order that Defendant compensates Plaintiff with a rate of pay and other benefits and emoluments to employment, to which he would have been entitled, had he not been subject to unlawful discrimination;

   e. Order Defendant compensate Plaintiff with an award of front pay, if appropriate;

   f. Order Defendant compensate Plaintiff for the wages and other benefits and emoluments of employment lost, because of Defendant's unlawful

  conduct;

g. Order Defendant pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of employment of life and other non-pecuniary losses as allowable;

h. Order Defendant pay to Plaintiff pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

i. Award Plaintiff his attorneys' fees and costs;

j. Award Plaintiff punitive damages under the ADA due to Defendant's intentional and/or reckless disregard of the employment laws and retaliatory conduct related thereto; and

k. The Court award such other relief as is deemed just and proper.

**JURY DEMAND**

  Plaintiff demands trial by jury.

        HAHALIS & KOUNOUPIS, P.C.

        By: */s/ George S. Kounoupis*
          GEORGE S. KOUNOUPIS, ESQUIRE
          20 East Broad Street
          Bethlehem, PA 18018
          (610) 865-2608
          Fax: (610) 691-8418
          hklaw@ptd.net
          Attorneys for Plaintiff,
          Mark Suter

Date: November 5, 2021